UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| VADA P. KILGORE, Executor of the Estate of Ralph F. Kilgore, <br><br> Plaintiff, <br><br> V. <br><br> UNITED STATES OF AMERICA <br><br> Defendant/Third-Party Plaintiff, <br><br> V. <br><br> HUNTSVILLE TN OPCO, LLC, et al., <br><br> Third-Party Defendants. | Civil Action No. 5: 21-255-DCR <br><br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant United States has filed a motion to exclude testimony of Plaintiff Vada Kilgore's experts or, in the alternative, for summary judgment. [Record No. 73-1] It argues that Kilgore has failed to provide sufficient medical expert testimony to satisfy a prima facie case of negligence, and that she otherwise lacks evidence to establish causation. [*Id.*] Conversely, Kilgore contends that her claim should survive under the theory of *res ipsa loquitur*, and that the proposed expert testimony in issue is relevant and satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Record No. 75] The United States' motion for summary judgment will be granted, in part, because *res ipsa loquitur* is inapplicable, and Kilgore's proposed expert does not base his decision on reliable methodology or sufficient facts or data.

**I.**

The Complaint filed by Vada Kilgore, individually and as the administratrix of the estate of Ralph F. Kilgore, alleges that the Veterans Administration Medical Center ("VAMC") provided negligent care to Mr. Kilgore, resulting in "serious, grievous, and permanent injuries that ultimately led to his death." [Record No. 1] Mr. Kilgore was admitted to the VAMC on March 7, 2019, due to dementia-related behavioral issues. [*Id.* at 3.] He was able to walk independently upon admission but began requiring assistance as early as April 1, 2019. [*Id.* at 3-4.] Mr. Kilgore allegedly "suffered an unwitnessed fall" a few days later, resulting in a fracture of his left hip. [*Id.* at 4.] A doctor performed surgery on Mr. Kilgore's fractured hip before medical professionals transported him to Huntsville Post-Acute and Rehabilitation Center ("Huntsville") on April 11, 2019. [*Id.* at 4.]

A Huntsville physician noticed redness near Mr. Kilgore's tailbone in an area unrelated to his hip operation and, on April 12, 2019, ordered the application of barrier cream to his "stage I pressure wound".[1] [Record No. 26, p. 5.] Following admission to another facility and various discharges, Mr. Kilgore was transferred to Fort Sanders on May 4, 2019. [*Id.* at 7.] There, an examination revealed that his skin was significantly red with "caked-on barrier cream that had been on the skin for a long time" with "excoriations."[2] [*Id.*] Mr. Kilgore "had a fall from his bed . . . causing a laceration on his head that necessitated CT scans" five days

---

[1]  "Barrier cream is an ointment applied to a patient's skin to reduce friction and prevent pressure sores." *Estate of Gibson v. Magnolia Healthcare, Inc.*, 91 So. 3d 616, 627 n.34 (Miss. 2012).

[2]  Excoriation is "the act of abrading or wearing off the skin," or "a raw irritated [skin] lesion." *Excoriation*, MERRIAM-WEBSTER'S MEDICAL DICTIONARY, http://www.merriam-webster.com/medical/excoriation (last visited December 9, 2022).

after admission. [*Id.*] He was transferred to a nursing facility a couple of weeks later but was re-admitted to Fort Sanders due to "behavior issues" and "was found to have a multi-drug resistant infection." [*Id.* at 8.] Medical notes indicate that he had a worsening infected bed sore, which was most probably a "stage II" pressure wound and likely required surgery "in the near future." [*Id.* at 8-9.] He was discharged from Fort Sanders for a "follow up in 7-10 days to see how the wound was healing" on June 12, 2019. [*Id.* at 9.] But Kilgore was re-admitted the next day with a "stage III" wound and "substantial discomfort." [*Id.*] Mr. Kilgore died on June 27, 2019. His death certificate identified "the immediate cause of death as a 'pressure ulcer of sacral region,'" which is colloquially known as a bed sore. [*Id.* at 10.]

Plaintiff Vada Kilgore filed suit against the VAMC pursuant to the Federal Tort Claims Act, alleging ordinary negligence, medical negligence, and loss of consortium. [Record No. 1] During discovery, Kilgore obtained experts Perry Starer, M.D. and Sherrie Thomas, RN to testify regarding the breach of the standard of care and causation. The United States contends that Kilgore's expert should be excluded because the plaintiff failed to comply "with Rule 26 [of the Federal Rules of Civil Procedure] and this Court's Orders, as well as [Rule 702 of the Federal Rules of Evidence] and *Daubert* principles." [Record No. 73-1] It argues, in the alternative, that summary judgment should be issued in its favor because the plaintiff has failed to provide evidence to show causation. [*Id.* at 22.]

**II**.

To establish medical malpractice under relevant Kentucky law, a plaintiff must prove: (1) the standard of care recognized by the medical community, as applicable to the particular defendant; (2) the defendant departed from the standard of care; (3) the defendant's departure from the standard of care was a proximate cause of the plaintiff's injuries; and (4) "that

damages resulted from the" alleged injury.[3]  *Heavrin v. Jones*, No. 2002–CA–000016, 2003 WL 21673958, at *1 (Ky. Ct. App. July 18, 2003).  The plaintiff is required to present expert testimony that establishes the standard of care and causation "[e]xcept in limited factual circumstances."  *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (citing *Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936)); *see also Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) ("Kentucky law generally requires that a plaintiff prove both the existence of malpractice and causation with expert testimony.").

*Res ipsa loquitur* is an exception to the expert-testimony requirement which Kilgore argues pertains to this case.  "The doctrine of *res ipsa loquitur* 'simply recognizes that as a matter of common knowledge and experience [,] the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing the injury.'"  *Banes v. Otis Elevator Co.*, 2 F. App'x 461, 467 (6th Cir. 2001) (quoting *Bell & Koch, Inc. v. Stanley*, 375 S.W.2d 696, 697 (Ky. 1964)).  "Under the '*res ipsa loquitur*' exception, a patient does not need expert testimony about the standard of care if an ordinary person could conclude that a certain result would not happen if the doctor had performed with the proper skill."  *Phillips v. Tangilag*, 14 F.4th 524, 540 (6th Cir. 2021).  "In those cases, expert testimony is unnecessary because 'the [factfinder] may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'"  *Ashland Hospital Corp. v. Lewis*, 581 S.W.3d 572, 578 (Ky. 2019) (quoting *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010)).

---

[3]  The parties agree that Kentucky substantive law applies in this case because the allegedly negligent acts occurred in Kentucky.  *See* 28 U.S.C. §1346(b)(1).

A plaintiff must show three elements to invoke the doctrine of *res ipsa loquitur* under Kentucky law: (1) "the instrumentality that caused the injury must be under the control and management of the defendant"; (2) "the circumstances must indicate that the accident could not have occurred in the absence of the defendant's negligence"; and (3) "the plaintiff's injury must have resulted from the accident." *Snider v. Wal-Mart Stores, Inc.* 2016 WL 319878, at *2 (W.D. Ky. Jan. 26, 2016) (citing *Venon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960)); *see also Chamis v. Ashland Hosp. Corp.*, 532 S.W.3d 652, 656 (Ky. Ct. App. 2017) ("[T]he *res ipsa loquitor* doctrine allows negligence to be inferred from medical evidence in the record showing the risk of injury was extraordinary, its occurrence was within the defendant's exclusive control, and the plaintiff did not contribute to his own injury.").

Importantly, "the doctrine . . . is inapplicable where the instrumentality producing the injury or damage is unknown or is not in the exclusive control of the defendant." *Helton v. Forest Park Baptist Church*, 589 S.W.2d 217, 219 (Ky. Ct. App. 1979); *see also Halsey v. Agco Corp.*, 2017 U.S. Dist. LEXIS 174075, at *9 (E.D. Ky. Oct. 20, 2017) (quoting *Helton*, 589 S.W.2d at 219); *Howard v. Elizabethtown*, No. 2020-CA-0124, 2022 Ky. App. Unpub. LEXIS 767, *17-18 (Ky. Ct. App. July 1, 2022). In *Helton*, a two-year-old girl "sustained a severe [eye] injury" while under adult supervision in a church nursery. 589 S.W.2d at 218. No one witnessed the accident, and "[t]here [were] no witnesses who [knew]: 1) what object or instrumentality injured the [infant]; 2) how long it had been in the nursery; 3) where it came from; or 4) how it found its way into the nursery." *Id.*

The *Helton* court concluded that the "trial court did not err in refusing to apply the doctrine of *res ipsa loquitur* and granting summary judgment" because "there [was] no evidence as to what the instrumentality was that caused the injury, and there [was] no evidence

that it was under the control or management of the [defendants]." *Id.* The court explained that *res ipsa* requires more than "the occurrence of an accident," and the doctrine does not apply "where the proof of occurrence, without more, leaves the matter resting only to conjecture." *Id.* at 219; *see also Halsey v. AGCO Corp.*, No. 16-cv-461, 2017 WL 4767679, at *4 (E.D. Ky. Oct. 20, 2017). Under such circumstances, a factfinder "could only speculate, surmise or guess as to how [the] injury occurred, and for [that] reason the case [was] one to be decided by the court as a matter of law." *Helton*, 589 S.W.2d at 219.

In this case, the instrumentality which caused Mr. Kilgore's injury is unknown. There were no witnesses, and the factfinder would be left to speculate how Mr. Kilgore fractured his hip.[4] One theory is that Mr. Kilgore's hip fracture occurred when he became combative during his hospitalization, requiring staff to call the police. [Record No. 67] The plaintiff's expert proposes that "something got twisted or pushed or bent during a moment of agitated behavior and efforts to hold him in place" by either the police or hospital staff. [*Id.*][5] Another theory is that Mr. Kilgore suffered an unwitnessed fall while under one-to-one observation. [*Id.*][6]

*Res ipsa loquitur* means "the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may

---

[4] The United States points out that courts conduct bench trials to resolve cases brought pursuant to the Federal Tort Claims Act, but this Court does not act as the factfinder for purposes of this motion.

[5] Specifically, Dr. Starer stated: "I would also have to mention the police force who had contact with him as well during that period. Collectively, I believe this was the group that was responsible. Individually, without further information, I would not be able to point to just one of them." [*Id.*]

[6] The plaintiff's expert states that Mr. Kilgore's fracture was "more likely than not" caused by "one of . . . two" theories. [Record No. 67]

fairly be found to have been occasioned by negligence." *Sweeney v. Erving*, 228 U.S. 233, 238 (1913). Here, the plaintiff has not shown the instrumentality, or "way in which the thing happened," negating a reasonable inference of negligence. In other words, without knowledge of the "thing," it cannot "speak for itself." This case "leaves the matter resting only to conjecture." *Hale v. O'Charley's Rest. Props.*, 2021 Ky. App. Unpub. LEXIS 181, at *7 (Ky. Ct. App. Apr. 2, 2021). *Cf. Ross v. American Red Cross*, 567 F. App'x 296, 309 (6th Cir. 2014) ("Where the evidence shows 'that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of *res ipsa loquitur* does not apply.'" (quoting *Jennings Buick, Inc. v. City of Cincinnati*, 406 N.E.2d 1385, 1389 (Ohio 1980))).[7]

### III.

Summary judgment is appropriate if there is no genuine dispute with respect to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In other words, the moving party must show the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006); *see also Earle v. United States*, No. 6:13-CV-184, 2016 WL 8814363, at *5 (E.D. Ky. Feb. 8, 2016).

---

[7] Kilgore does not argue that the second exception under Kentucky law—the party-admission exception—applies in this case, which requires the defendant-doctor to admit that he was negligent or caused harm to the plaintiff. *Phillips v. Tangilag*, 14 F.4th 524, 540 (6th Cir. 2021).

Kilgore argues that Dr. Starer's testimony should not be excluded because it is relevant and satisfies *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Record No. 75, p. 12] When faced with a question regarding expert testimony exclusion, "[t]he court operates in a 'gatekeeping role' that ensures that the testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *In re Zostavax*, 579 F.Supp.3d 675, 678 (E.D. Pa. 2021) (quoting *Daubert*, 509 U.S. at 597); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145 (1999). A court should admit relevant expert testimony only if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. In *Daubert*, the Supreme Court of the United States provided factors that district courts consider, "including if the theory or technique has been or can be tested, whether such theory or technique has undergone peer review and publication, what the known or potential rate of error is for the theory or technique, and whether the theory or technique is 'generally accepted.'" *Modern Holdings, LLC v. Corning, Inc.*, No. 5:13-cv-00405, 2018 WL 561857, at *2 (E.D. Ky. Jan. 25, 2018) (quoting *Adams v. Cooper Indus., Inc.*, No. 03-cv-476, 2007 WL 2219212, at *2 (E.D. Ky. July 30, 2007)).

"[T]he proponent of expert testimony . . . bears the burden of proving its admissibility." *E.E.O.C v. Kaplan High Educ. Corp.*, 748 F.3d 749, 752 (6th Cir. 2014). "The party presenting the expert need not show that the opinions of the expert are correct but rather that by a preponderance of the evidence the opinions of the expert are reliable." *Zostavax*, 579

F.Supp.3d at 678 (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994)).

Dr. Starer's opinion is unclear. He appears to state that his "number one" theory is that Mr. Kilgore suffered an unwitnessed fall, but there is no indication that he "engage[d] in 'standard diagnostic techniques by which doctors normally rule out alternative causes' to reach a conclusion as to which cause is most likely." *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 179 (6th Cir. 2009) (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d at 760). To the extent he states that the injury itself shows that Mr. Kilgore fell, "the Court is not required 'to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Washington v. Rodriguez*, No. 17-CV-178, 2019 U.S. Dist. LEXIS 34490, at *6 (S.D. Miss. Jan. 7, 2019) (quoting *General Electric v. Joiner*, 522 U.S. 136, 146 (1997)). He also appears to adopt the opinion of a VAMC surgeon, who was not deposed. Yet, merely reiterating what another physician has determined is insufficient. *See United States Gypsum Co. v. Lafarge North America Inc.*, 670 F.Supp.2d 748, 758 (N.D. Ill. 2009) (stating that courts exclude testimony "when an expert is 'just parroting the opinion' of another expert").

Kilgore's proposed expert testimony regarding the standard of care is also contingent on an assumption that Mr. Kilgore fell. [Record Nos. 65, p. 9; 67, p. 78-79] But an expert's testimony "based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). In summary, the plaintiff has failed to provide adequate expert evidence because Dr. Starer based his opinion on insufficient facts or data, and he did

"not demonstrate[] that this opinion stemmed from a reliable methodology that he reliably applied." *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023).[8]

## IV.

*Res Ipsa Loquitur* is inapplicable to the facts of this case, requiring expert testimony for Kilgore's medical negligence claim to survive. Dr. Starer is the plaintiff's only proposed expert prepared to testify regarding causation. [*See* Record No. 65, p. 9.] The basis of his opinion is insufficient, resulting in the plaintiff's failure to raise a genuine issue of material fact with respect to essential elements of her medical malpractice claim.[9]

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The United States' motion [Record No. 73] is **GRANTED**, in part and **DENIED**, in part.

2. Plaintiff Kilgore's medical malpractice claim is **DISMISSED**, with prejudice.

Dated: April 11, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[8] Because Dr. Starer's opinion is unreliable, the Court need not address the parties' argument regarding Rule 26 of the Federal Rules of Civil Procedure.

[9] The parties did not specifically address whether Kilgore's ordinary negligence or loss of consortium claims should be dismissed. *See Moisenko v. Volkswagenwerk Aktiengesellschaft*, No. 98-2202, 1999 WL 1045075, at *6 (6th Cir. Nov. 12, 1999) (reversing "the district court's *sua sponte* grant of summary judgment").